**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DARRON HARRIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-16606** |
| **TIM HOOPER** | **SECTION: "E"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Darron Harris, is a state prisoner incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. On May 16, 2001, he was convicted of two counts of armed robbery, one count of attempted simple robbery, and one count of first degree robbery under Louisiana law.[1] On June 27, 2001, he pleaded guilty to being a second offender and was sentenced to the following terms of imprisonment: on each armed robbery conviction to fifty years without benefit of probation, parole, or suspension of sentence; on the attempted simple robbery conviction

---

[1] State Rec., Vol. 1 of 4, minute entry dated May 16, 2001; State Rec., Vol. 1 of 4, jury verdict forms.

to three and one-half years; and on the first degree robbery conviction to twenty five years without benefit of probation, parole, or suspension of sentence. It was ordered that the sentences be served consecutively.² On April 3, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed his convictions and sentences.³ The Louisiana Supreme Court then denied his related writ application on December 13, 2002.⁴

On April 9, 2014, petitioner filed an application for post-conviction relief with the state district court.⁵ That application was denied on December 16, 2014.⁶ The Louisiana Fourth Circuit Court of Appeal likewise denied relief on July 13, 2015.⁷ On September 23, 2016, the Louisiana Supreme Court then denied petitioner's related writ application, stating:

> Denied. Relator's convictions and sentences became final in 2002, and he does not provide a dated copy of the application for post-conviction relief filed in the District Court. Relator fails to offer proof that his application was timely filed in the District Court or that an exception applies to the two-year time limitations period. La.C.Cr.P. art. 930.8; State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189.⁸

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.⁹ The state filed a response arguing that petitioner's application is untimely.¹⁰ The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

---

² State Rec., Vol. 2 of 4, transcript of June 27, 2001; State Rec., Vol. 1 of 4, minute entry dated June 27, 2001.
³ State v. Harris, 815 So.2d 402 (La. App. 4th Cir. 2002); State Rec., Vol. 3 of 4.
⁴ State v. Harris, 831 So.2d 982 (La. 2002); State Rec., Vol. 3 of 4.
⁵ The date the application was filed is unclear from the state court record, in that the original application apparently either never reached the state district court or was misplaced by the court. However, in his related filings in the state appellate courts, petitioner states that he filed the application on April 9, 2014. In its response, the state indicates a willingness to accept that representation as true, see Rec. Doc. 14, p. 12, and the undersigned will do the same.
⁶ State Rec., Vol. 1 of 4, Docket Master entry dated December 16, 2014.
⁷ State v. Harris, No. 2015-K-0696 (La. App. 4th Cir. July 13, 2015); State Rec., Vol. 4 of 4.
⁸ State ex rel. Harris v. State, 200 So.3d 350 (La. 2016); State Rec., Vol. 4 of 4.
⁹ Rec. Doc. 1.
¹⁰ Rec. Doc. 14.

underlying criminal judgment becomes "final." 28 U.S.C. § 2244(d)(1)(A).[11] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Here, the Louisiana Supreme Court denied petitioner's direct-review writ application on December 13, 2002.[12] Accordingly, his state criminal judgment became final for AEDPA purposes, and his federal limitations period therefore commenced, on March 13, 2003, when his period expired for seeking review by the United States Supreme Court. His limitations period then expired one year later on March 15, 2004,[13] unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be

---

[11] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

[12] State v. Harris, 831 So.2d 982 (La. 2002); State Rec., Vol. 3 of 4.

[13] The Court is aware that, because 2004 was a leap year, the three-hundred-sixty-fifth day of petitioner's one-year period was March 12, 2004. However, courts have held that it is the "anniversary date" on which the AEDPA's statute of limitations expires, regardless of the existence of an additional day due to a leap year. See, e.g., United States v. Hurst, 322 F.3d 1256, 1261-62 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000); Zeno v. Louisiana, Civ. Action No. 06-4096, 2009 WL 3190461, at *3 n.17 (E.D. La. Sept. 30, 2009). Moreover, because the "anniversary date" of March 13, 2004, fell on a Saturday, the federal limitations period here was extended through the following Monday, March 15, 2004. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, petitioner had no such applications pending before the state courts during the applicable one-year period.[14] Accordingly, he clearly is not entitled to statutory tolling.

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

---

[14] The only state court filings during that period appear to concern defense counsel's request for a *subpoena duces tecum* to procure certain records. However, attempts to procure documents are not considered applications "for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Sylve v. Tillery, Civ. Action No. 09-6352, 2011 WL 1117402, at *4 (E.D. La. Mar. 4, 2011) (involving application for the issuance of a *subpoena duces tecum*), adopted, 2011 WL 1059107 (E.D. La. Mar. 22, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

Further, although petitioner subsequently filed a post-conviction application in 2014, applications filed *after* the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

Lastly, the Court also notes that the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). Petitioner contends that he is actually innocent of the crimes of which he stands convicted. However, the undersigned finds that petitioner has not made the showing required under McQuiggin for the following reasons.

In McQuiggin, the Supreme Court expressly cautioned: "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Further, as the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted). With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013); accord Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *2-3 (E.D. La. July 27, 2015), aff'd, 667 Fed. App'x 474 (5th Cir. 2016), cert. denied, 137 S. Ct. 1105 (2017); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence presented at trial and on which petitioner's convictions were based. See, e.g., Johnson, 2015 WL

4528889, at *3; Lyles, 2014 WL 4674673, at *6.  Here, that evidence was recounted in the Louisiana Fourth Circuit Court of Appeal's summary of the facts of this case on direct appeal:

> Monica Butler Dillon testified that on December 6, 2000, between 9:00 and 10:00 p.m., she was walking with her three-year-old daughter from her parking place to her apartment in a complex on Roger Drive.  She noticed the shadow of a person overtaking her, and she turned around to see defendant, who demanded her purse.  Defendant had his hand in his jacket pocket, as if he had a gun.  The victim picked defendant's photograph out of a lineup shown to her by Det. Patrolia.  She later identified the defendant in court as the person who tried to rob her.  On cross-examination, Ms. Dillon testified that although it was dark, there was sufficient lighting in the parking area, and said she told police the would-be robber was dark-complected, five feet nine inches tall, with a small build and short afro hairstyle.  She said that he was wearing dark denims and a dark fleece-type jacket.
>
> Cheryl Williams testified that she, her husband and their daughter were returning to their Roger Drive apartment on January 11, 2001, at approximately 8:30 p.m., when defendant robbed them.  She was getting out of the car with her daughter, when defendant approached them and asked for her purse.  She said she did not have any money, and defendant countered that she did, and threatened to shoot her daughter.  Mrs. Williams gave defendant ten or twenty dollars, and he demanded more, telling her to ask her "man," referring to her husband, Eric Williams.  Eric Williams had been fumbling around in the back seat, and Mrs. Williams called out to him, telling him that defendant wanted their money.  Eric Williams said he did not have any money, but suggested that the robber take their leather jackets and sell them.  Defendant then fled.  Mrs. Williams said she never saw a gun, but that defendant threatened to shoot her if he did not give him her purse, and that he had his hand behind him, as if it were in his back pocket.  Both Cheryl and Eric Williams selected defendant's photograph in the lineup conducted by Det. Patrolia, and identified the defendant in court as the person who robbed them.  Mrs. Williams admitted on cross examination that when shown the photographic lineup she believed one photo was of a person suspected by police as being the person who robbed her.
>
> New Orleans Police Detective David Patrolia testified that he prepared a photographic lineup containing defendant's photo, which he displayed to Monica Butler on January 21, 2001.  Ms. Butler positively identified defendant as the person who robbed her on Roger Drive.  Det. Patrolia displayed another lineup containing defendant's photo to Cheryl Williams and her husband Eric.  Both the victim and her husband viewed the lineup separately, and each positively identified defendant.
>
> Tina Jones testified that defendant robbed her on November 29, 2000.  Ms. Jones, then five months pregnant, was getting her two children out of the car after coming home from work that night, when defendant approached her and demanded her purse.  He apologized for robbing her in front of her children, but when she

hesitated, he raised his shirt to display a gun. After getting her purse and beginning to walk off, he asked her how much money she had in her purse. She said she had $100, when she actually had $400 in cash and a $100 check. The defendant became agitated and pulled out his gun. Ms. Jones estimated that the encounter lasted between fifteen to twenty minutes. Ms. Jones identified defendant's photograph in a lineup presented to her by Det. Wharton, and later identified him in court as the person who robbed her.

New Orleans Police Detective Danny Wharton testified that after defendant was arrested, he presented a photo lineup containing defendant's photo to Tina Jones, and she selected defendant's photograph.

Shanicka Reaux testified that on December 14, 2000, she entered her apartment, put down her grocery bags, and walked back toward her front door to find defendant in her living room holding her purse. He said he was robbing her, and took out a gun when she expressed disbelief. He took money from her purse, and asked for more. She said she had money in her car, and he took her car key and purse and fled. On January 18, 2001, she selected defendant's photograph from a lineup. She later identified defendant in court as the person who robbed her.

New Orleans Police Detective Hope McKee testified that on December 14, 2000, she investigated the armed robbery of Shanicka Reaux. She developed defendant as a suspect based on his arrest for another robbery in the area, and his description. She presented a photo lineup to Shanicka Reaux, who selected defendant's photograph.

Colin Hebert testified that on January 17, 2000, defendant attempted to rob him. He was sitting on his car in front of his home, when defendant approached and asked for his brother, by name. Mr. Hebert said his brother was not home, and then defendant demanded money, putting his right hand underneath his shirt as if he had a weapon. Mr. Hebert said he had no money, and defendant expressed disbelief that Mr. Hebert was in front of his home and had no access to money. Mr. Hebert eventually said he would get some money inside. Mr. Hebert walked to his front door, and the man demanded the cordless telephone that was in his rear pocket. Mr. Hebert, by then inside of his front door, argued with the man for a couple of minutes before slamming and locking the door and telephoning police. Police apprehended defendant and returned him to the scene, where Mr. Hebert identified him as the person who had attempted to rob him. He later identified defendant in court as the person who attempted to rob him.

New Orleans Police Officer Kevin Jackson testified that he arrested defendant on January 17, 2001, after detaining him and getting an identification from Mr. Hebert. Officer Jackson stated that as defendant was stepping over to the police car after being stopped, he threw up his hands, asked why he was being stopped, and said he did not rob anybody. Officer Jackson admitted on cross-examination that no gun was ever found on defendant's person.

Defendant testified on his own behalf, against the advice of his defense counsel, and after being questioned by the trial court as to his decision to testify. Defendant testified that he was twenty-five years old, had a GED high school

diploma, and Job Corp training in business office technologies. He said Henry's Soul Food and Pie Shop employed him during the period of November 2000 through January 2001. He denied robbing any of the victims. Defendant said he knew Colin Hebert, and admitted talking to Mr. Hebert that night. He denied attempting to force Mr. Hebert to give him any money.[15]

The foregoing "old" evidence was obviously compelling evidence of guilt, and so petitioner would face a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added). Here, petitioner presents no new evidence whatsoever, much less any evidence of the type or caliber referenced in Schlup. Therefore, he has not met "the threshold requirement" for McQuiggin to apply, i.e. a showing that "in light of the *new* evidence, *no* juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329; emphasis added). Accordingly, McQuiggin does not aid him.

Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than March 15, 2004, in order to be timely. His application was not filed until more than a decade later in 2016, and, therefore, it is untimely.

---

[15] State v. Harris, 815 So.2d 402, 404-06 (La. App. 4th Cir. 2002); State Rec., Vol. 3 of 4.

# RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Darron Harris be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[16]

New Orleans, Louisiana, this fifth day of May, 2017.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[16] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.